UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

The minor child "C.O." and the Estates of PLAYNGAM ONGPITUK, GINANA ONGPITUK, and SUPINYA K. ONGPITUK; through UNCHARLIE PHARNGTRAKUL, the guardian of the minor child "C.O." and personal representative of the Ongpituk estates,

Plaintiffs,

v.

COLEMAN COMPANY, INC., a Delaware corporation,

Defendant.

C06-1779 TSZ

ORDER

THIS MATTER comes before the Court on defendant Coleman Company, Inc.'s ("Coleman") motion in limine, docket no. 129, to exclude certain materials from evidence at trial. Having reviewed all papers filed in support of and in opposition to Coleman's motions, and having considered the oral arguments of counsel, the Court GRANTS IN PART, DENIES IN PART, and DEFERS IN PART Coleman's motion.

**Background**

Plaintiffs allege that the deaths of Playngam, Gintana, and Supinya "Kat" Ongpituk, the father, mother, and sister of the first named plaintiff, "C.O.", a minor maintaining this action through guardian Uncharlie Pharngtrakul, were caused by carbon monoxide poisoning

ORDER - 1

resulting from the defective design of a Powermate 5045 propane-powered radiant heater manufactured by Coleman. Plaintiffs assert causes of action under the Washington Product Liability Act ("WPLA"), namely RCW 7.72.030(1) & (3). In advance of trial, Coleman seeks to exclude from evidence other incidents involving its products, other manufacturers' products, and documents generated by the Consumer Product Safety Commission ("CPSC"). At oral argument, plaintiffs conceded that incidents occurring after the deaths at issue in this case have no relevance, and the Court has ruled that plaintiffs will not be permitted to present evidence concerning any incident that occurred after May 30, 2006.

**Discussion**

**A.   Evidence Regarding Other Coleman Incidents, Claims, or Lawsuits**

Plaintiffs have the burden to establish other incidents are "substantially similar" to the subject incident. Four (4) incidents involving the Powermate 5045 heater occurred before the deaths in this case, as follows:

| Name | Location | Date of Incident |
|---|---|---|
| Lopez | California | 11/22/00 |
| Van Story | North Carolina | 2/13/03 |
| Lewis | New Mexico | 4/17/05 |
| Padilla | California | 12/18/05 |

With respect to each of these prior incidents, plaintiffs have marked as an exhibit various materials contained in a separate black folder, namely Exhibits 222, 225, 227, and 242, respectively.

In product liability cases, Washington courts allow evidence of other incidents involving the same product because such information relates to the likelihood and severity of harm, both of which are factors in the risk-utility approach to proving a design defect. *See Higgins v. Intex Recreation Corp.*, 123 Wn. App. 821, 832-33 (2004). Plaintiffs' experts, Robert Engberg and Gary Hutter, have presented declarations concerning the similarities between the previous and the subject incidents, which are sufficient to satisfy the

ORDER - 2

"substantially similar" test.  *See* Engberg Decl. at ¶ 10 (docket no. 93-8); Hutter Second Decl. at 17 (docket no. 107).  The previous accidents and the current one need not "correspond with one another in every detail," and "substantially similar" does not mean identical.[1]  *See Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004).   The Court DENIES IN PART Coleman's motion in limine and will permit testimony, if otherwise admissible, about previous incidents involving the Coleman Powermate products and the Focus 15 and 30 heaters.

**B.     Admissibility of Plaintiffs' Proposed Evidence Relating to Prior Incidents**

Coleman's motion in limine also seeks to exclude evidence of prior incidents involving Coleman products as inadmissible hearsay or pursuant to Rule 403.  Plaintiffs offer evidence of prior incidents involving the Powermate 5045 via Exhibits 222, 225, 227, and 242, and concerning other Coleman products by way of Exhibits 200-221, 223-224, 226, 228-241, and 243-247.  Plaintiffs rely on the business records exception in Rule 803(6), the public records exception in Rule 803(8), and the residual exception in Rule 807.[2]

---

[1] Coleman contends that the prior Powermate 5045 incidents are not "substantially similar" and therefore should be excluded from evidence because this case is the first time "a claimant has alleged that the subject heater is defective for failing to incorporate a safety device to shut it down in the event its output is regulated by the ***propane tank valve***."  Coleman's Motions in Limine at 4 (docket no. 129) (emphasis in original).  Coleman's argument is contradicted by the factual recitation in a previous case:

> Although Coleman contends the two brands of heaters are very different, plaintiff contends that they are substantially similar.  Both brands were intended to be used in conjunction with propane cylinders as fuel sources.  All but one of the "Focus" models and all of the Powermate models allowed the user to vary the heat outputs by selecting a lower b.t.u. setting.  *The output could be reduced further from the lowest setting by adjusting the fuel flow at the propane tank* or by manually holding down the control valve.  When operated on reduced fuel flow, the heaters produced increased, and potentially lethal, levels of carbon monoxide.

*Van Den Eng v. Coleman Co.*, 2006 WL 1663714 at *2 (E.D. Wis.) (emphasis added).  More importantly, tank valve control is not plaintiffs' only theory of liability.

[2] Plaintiffs have identified no proposed documents that would be admissible solely under Rule 807.

ORDER - 3

### 1. Business Records Exception

Although many documents contained in the proposed exhibits were present in the Coleman records produced during discovery, most of them were not Coleman's business records and the source of the information lacks trustworthiness.[3] In addition, substantially all of the documents contain hearsay within hearsay and fail to satisfy the requirements of Rule 805.[4] In addition, because Coleman has already admitted notice of "incidents in which consumers have allegedly operated Coleman propane radiant heaters in enclosed spaces resulting in their deaths from carbon monoxide exposure," see Pretrial Order, Admitted Fact No. 11, the relevance of the details relating to the prior incidents will in most cases be substantially outweighed by the danger of undue prejudice or the needless presentation of cumulative evidence. See Fed. R. Evid. 403. Finally, many documents tendered by plaintiffs do not satisfy authentication requirements.[5]

### 2. Public Records Exception

Plaintiffs also rely upon the public records exception to admit evidence of other incidents at trial. This exception is founded upon an agency's duty to investigate and report, and the sources for any information must not lack trustworthiness. See *Fraley v. Rockwell Int'l Corp.*, 470 F. Supp. 1264, 1267 (S.D. Ohio 1979) (observing that "[i]f the factual

---

[3] Except as provided in this Order, the Court DEFERS ruling until trial on the admissibility of individual documents contained in the proposed exhibits.

[4] For example, in the Lopez folder, Exhibit 222, the Sacramento Fire Department Information Bulletin and File Memorandum by Craig Pack both constitute double hearsay, with neither layer qualifying for an exception; the Information Bulletin is not a certified business record or an investigatory report and is not based on the personal knowledge of the author, while the File Memorandum, which recites hearsay statements and second-hand information, does not even identify the role or position of the author or the organization to which he belongs, and therefore bears no indicia of trustworthiness. See Fed. R. Evid. 802, 803(6), 803(8)(B). Both the Information Bulletin and the File Memorandum will be excluded.

[5] For example, uncertified copies of documents from other cases are not relevant, are unduly prejudicial, and do not satisfy authentication requirements. Thus, the subpoenas and notices of deposition relating to Detective Moore (Lopez, Exh. 222) and Sheriff-Coroner Bill Cogbill or his designee (Padilla, Exh. 242), as well as the complaint in the *Padilla* case, will be excluded.

ORDER - 4

findings in the public document themselves are based upon hearsay, then the underlying hearsay also must fit within an exception to the general hearsay rule for the public document to be admissible"); <u>Knotts v. Black & Decker, Inc.</u>, 204 F. Supp. 2d 1029 (N.D. Ohio 2002) (excluding CPSC reports because they contained statements of witnesses who were not employed by the CPSC, which were not otherwise admissible to prove the truth of the matter asserted). Most of the documents contained in plaintiffs' proposed exhibits relating to other incidents fail to satisfy this hearsay exception.[6]

### C. Other Coleman Products - Focus 3, 5, and 10 Heaters, Lanterns, and Gas Stoves

The Focus 3, 5, and 10 heaters were designed for indoor use and were designed to operate with one-pound propane cylinders, which are not independently adjustable. Plaintiffs contend that evidence regarding the Focus 3, 5, and 10 heaters is relevant. Plaintiffs note that the Focus 5 model was the subject of tests performed in 1992 by one of Coleman's employees, Randy May, and contend that these tests will validate plaintiffs' tank valve control theory. For these tests, Mr. May modified the Focus 5 heater to burn with

---

[6] For example, with respect to both the Van Story and Padilla incidents, the CPSC prepared an Epidemiologic Investigation Report ("EIR"). In both instances, the EIR itself indicates that it is based solely on written reports or newsclips, <u>see</u> Exh. 225 at 7 & Exh. 242 at 81; in other words, the CPSC did not conduct an independent investigation, but instead relied upon the various law enforcement and coroner or medical examiner reports. Thus, even assuming that the EIRs satisfied the requirements of a business or public record, they are not admissible because they contain hearsay statements, as well as hearsay within hearsay, which do not qualify for any exception. <u>See</u> Fed. R. Evid. 805; <u>Knotts</u>, 204 F. Supp. 2d at 1041. The EIRs differ substantially in nature from the laboratory test reports, statistical studies, and investigative reports that have been admitted in other cases relied upon by plaintiffs. <u>See</u> <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153 (1988) (affirming trial court's admission of an investigative report by a Naval officer concerning the crash of a Naval aircraft, holding that the conclusions or opinions in such report, which were based upon the author's own factual investigation, were admissible under Rule 803(8)(C)); <u>United States v. Midwest Fireworks Mfg. Co.</u>, 248 F.3d 563, 566-67 (6th Cir. 2001) (admitting as public records CPSC documents concerning laboratory tests on fireworks performed by CPSC technicians and the conclusions based thereon as to whether the fireworks violated federal regulations). In contrast to the cases cited by plaintiffs, the EIRs at issue here do not contain investigative observations, laboratory test results, or statistical analysis, but instead rely upon, and merely reproduce, second- or third-hand knowledge of previous events. The EIRs in Exhibits 225 and 242 will be excluded.

ORDER - 5

reduced propane flow at low BTU outputs, and measured high rates of carbon monoxide production; he also discovered that when the product was altered to run at lower BTUs, the color on the burner ball would change from a bright orange to a darker color.  May Dep. at 126:6-131:18, Exh. 4 to Blue Decl. (docket no. 154).  The year after Mr. May performed these tests, Coleman changed the warning on the Focus 5 labels to read, in part, as follows:

> Carbon monoxide may be produced if burner ball does not glow brightly.  Do not use heater if the burner ball does not glow brightly within 30 seconds after lighting or during normal operation.

May Dep. at 132:7-133:15, Exh. 4 to Blue Decl.  This "burner ball" warning does not appear on the Powermate 5045.  *See* Photograph of Label on Incident Heater, Exh. A to Meether Decl. (docket no. 105).

      Plaintiffs' expert Robert Engberg has provided a detailed recitation of the similarities between the Focus and Powermate bulk-mount heaters, all of which according to Mr. Engberg incorporate a thermocouple burner safety sensor and gas shutoff valve, a primary and active burner screen, a heat reflector screen, and a single-stage gas regulator to index the heat settings from LOW to HIGH.  *See* Engberg Report dated Aug. 15, 2007 (docket no. 93-6) (also docket nos. 59-20 & 97-5).  Mr. Engberg has also indicated that "[a]ll Focus and Powermate bulk mounted models make substantially more [carbon monoxide] in the LOW heat setting than in the HIGH heat setting."  *Id.* at 6.  He has further observed that

> [a]ll Focus and Powermate bulk mounted models are marketed to the same 'target' crowd of campers, outdoorsmen, construction sites, and home/garage users.  The user will recognize the similar heaters by appearance, operation and output heat capacity.  The two heater designs appear in the same market locations and equipment departments in retail stores.  Thus, the consumer expects the same performance and function from either heater design as offered.

*Id.* at 7.  Although Coleman has described some differences between the two lines of heaters, *see* Meether Decl. at ¶ 13, Exh. E to Bird. Decl. (docket no. 131) (the Powermate heaters have replaceable burners as opposed to the permanently affixed burners on the Focus models, and the Focus heaters use curved air mixing tubes, whereas the Powermate design

ORDER - 6

incorporates straight mixing tubes), the Court is persuaded that the Focus and Powermate models are similar enough in design and purpose to render evidence about the products themselves both relevant and admissible.  Thus, the Court DENIES IN PART Coleman's motion in limine concerning its other products.  Plaintiffs will be permitted to introduce evidence concerning *inter alia* the design features of the various heaters and the labels and warnings associated therewith, as well as tests performed by Coleman on any of the Focus or Powermate products.  Because of the substantial dissimilarities in these indoor-designed products, however, evidence about prior incidents involving the Focus 3, 5, and 10 heaters will not be allowed at trial.

Finally, as to Coleman's stove and lantern products, plaintiffs' only reason for presenting such evidence appears to be related to warnings.  Plaintiffs assert that Coleman provides more complete warnings on the labels of its stoves and lanterns than on its heaters, and that such evidence is relevant to Coleman's recognition of the need to provide such information.  Plaintiffs provide copies of many of the labels at issue, *see* Exh. 3 to Blue Decl. (docket no. 154), but do not offer analysis of how these labels are different or better than the one on the Powermate 5045.  The Court DEFERS ruling until trial on the admissibility of evidence relating to warnings on stove and lantern products.

**C.    Other Manufacturers' Products**

   **1.    Italian-Made Bulk-Mount Heater (Harbor Freight Tools)**

Coleman's motion to exclude all evidence relating to the Italian-made heater is DENIED.  Evidence about the design of this product will be allowed.  The Court, however, DEFERS ruling as to evidence relating to the safety record of this heater.

   **2.    Mr. Heater's Portable Buddy**

The parties agree the Portable Buddy is a heater designed for indoor use, and it therefore does not serve the same purpose as the challenged product.  Moreover, it was not introduced into the market until 2001, almost two years after the manufacture of the

ORDER - 7

Powermate 5045 at issue. Such evidence, however, might be relevant to the placement of the thermocouple and the feasibility of alternative designs. The Court therefore DEFERS until trial Coleman's motion in limine to exclude evidence of this product.

### 3. Other Products

The parties have failed to describe the relevance of other products. The Court DEFERS to trial Coleman's motion to exclude evidence of the Primus, the Valor, or any other non-Coleman products.

## D. Consumer Product Safety Commission Documents

The Court DEFERS to trial Coleman's motion in limine to exclude CPSC documents. The Court notes, however, that CPSC reports, including any EIRs not already addressed in this Order, will not be admitted unless they satisfy Rule 805.

## E. Proposed Trial Exhibit 58

The Court GRANTS Coleman's motion to exclude proposed Exhibit 58, titled "Summary of All Heater Incidents." This document is not a business record of Coleman and was prepared by counsel to respond to discovery requests.

## Conclusion

Absent prior approval of the Court, issues or evidence upon which the Court has deferred ruling shall not be mentioned during jury voir dire or opening statements.

IT IS SO ORDERED.

DATED this 24th day of March, 2008.

*[signature]*
Thomas S. Zilly
United States District Judge

ORDER - 8